**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| REGINALD B., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:25CV265 |
| | ) | |
| FRANK J. BISIGNANO,<br>Commissioner of Social<br>Security, | ) | |
| | ) | |
| Defendant.[1] | ) | |

**MEMORANDUM OPINION AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff, Reginald B., brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of the final decision of Defendant, the Commissioner of Social Security (the "Commissioner"), denying Plaintiff's claim for Disability Insurance Benefits ("DIB"). (Docket Entry 1.) The Commissioner has filed the certified administrative record (Docket Entry 2 (cited herein as "Tr. __")), and both parties have submitted dispositive briefs in accordance with Rule 5 of the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g) (Docket Entry 7 (Plaintiff's Brief); Docket Entry 10 (Commissioner's

[1] The United States Senate confirmed Frank J. Bisignano as the Commissioner of the Social Security Administration on May 6, 2025, and he took the oath of office on May 7, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank J. Bisignano should substitute as Defendant in this suit. Neither the Court nor the parties need take further action to continue this suit by reason of the last sentence of Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Brief); Docket Entry 11 (Plaintiff's Reply)). For the reasons that follow, the Court should enter judgment for the Commissioner.

## I. PROCEDURAL HISTORY

Plaintiff applied for DIB (Tr. 169-75), alleging a disability onset date of March 30, 2023 (see Tr. 169, 172). Upon denial of that application initially (Tr. 65-74, 86-90) and on reconsideration (Tr. 75-85, 92-95), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 99-100). Plaintiff, his attorney, and a vocational expert ("VE") attended the hearing. (Tr. 34-64.) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 15-33.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-10, 167-68), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that decision, the ALJ made the following findings later adopted by the Commissioner:

> 1. [Plaintiff] meets the insured status requirements of the . . . Act through December 31, 2028.
>
> 2. [Plaintiff] has not engaged in substantial gainful activity since March 30, 2023, the alleged onset date.
>
> . . .
>
> 3. [Plaintiff] has the following severe impairments: osteoarthritis of the knees, degenerative joint disease of the feet, aortic valve regurgitation, obesity, post-traumatic stress disorder, depressive disorder, alcohol dependence, diabetes, and hypertension.
>
> . . .

> 4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> . . .
>
> 5. . . . [Plaintiff] has the residual functional capacity to perform medium work . . . except never climb ladders, ropes or scaffolds; never be exposed to hazards such as machinery and unprotected heights; limited to simple, routine and repetitive tasks and simple work-related decisions; changes in the work setting are limited to simple workplace changes; and occasional interaction with supervisors, coworkers and the public.
>
> . . .
>
> 6. [Plaintiff] is unable to perform any past relevant work.
>
> . . .
>
> 10. Considering [Plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [he] can perform.
>
> . . .
>
> 11. [Plaintiff] has not been under a disability, as defined in the . . . Act, from March 30, 2023, through the date of th[e ALJ's] decision.

(Tr. 20-28 (bold font and internal parenthetical citations omitted).)

## **II. DISCUSSION**

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of . . . review of [such a] decision . . . is extremely limited."

Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Plaintiff has not established entitlement to relief under the extremely limited review standard.

**A. Standard of Review**

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as

adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2] "To regularize the adjudicative process, the Social Security Administration [('SSA')]

[2] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity [('RFC')] to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[3] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not,

[3] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [government] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's [RFC]." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the government cannot carry its "evidentiary burden of proving that [the claimant]

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[5]

## B. Assignments of Error

Plaintiff argues that the Court should overturn the ALJ's finding of no disability on these grounds:

1) "[t]he ALJ failed to properly evaluate the medical source opinion evidence" (Docket Entry 7 at 9 (bold font and block formatting omitted); see also Docket Entry 11 at 2-7); and

2) "[t]he ALJ failed to properly evaluate the subjective symptom testimony" (Docket Entry 7 at 15 (bold font and block formatting omitted); see also Docket Entry 11 at 7-9).

Defendant contends otherwise and seeks affirmance of the ALJ's decision. (Docket Entry 10 at 3-19.)

### 1. Evaluation of Medical Opinions

Plaintiff's first assignment of error maintains that "[t]he [ALJ] failed to properly evaluate the medical source opinion evidence." (Docket Entry 7 at 9 (bold font and block formatting omitted); see also Docket Entry 11 at 2-7.) In particular, Plaintiff disputes the ALJ's finding "that each of [treating

[5] A claimant thus can qualify as disabled via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

psychiatrist] Dr. [German] Molina's opinions were unpersuasive[ as] . . . 'not supported by treatment records[,]'" (Docket Entry 7 at 10 (quoting Tr. 26)), because, in Plaintiff's view, "[e]ach of Dr. Molina's assessments contains support for the included limitations" (id.; see also id. at 10-11 (detailing Dr. Molina's findings Plaintiff believes support Dr. Molina's opinions (citing Tr. 1235-36, 1305-06, 1452-53))), and "the ALJ determined [Dr. Molina's] opinions were not supported by treatment records from December 2023[, which] . . . is an evaluation of the *consistency* of the opinions" (id. at 11 (emphasis in original) (citing Tr. 26 (in turn citing Tr. 571))). Plaintiff additionally contends that "[t]he ALJ's consistency analysis of Dr. Molina's opinions is also flawed[,]" because "the ALJ effectively rejected Dr. Molina's more restrictive limitations because they were inconsistent with [the state agency psychological consultants'] limitations[,] which the ALJ determined were not restrictive enough" (id. at 11-12 (citing Tr. 26)), and "overlook[ed] portions of the record which Dr. Molina's opinions are consistent with" (id. at 12; see also id. (describing evidence Plaintiff posits harmonizes with Dr. Molina's opinions (citing Tr. 772, 780, 787, 799-801, 803, 812, 818, 825))). Plaintiff also attacks the ALJ's analysis of the persuasiveness of the state agency medical consultants' opinions, asserting that "[t]he ALJ found the opinions persuasive but rejected the postural and environmental limitations without . . . articulat[ing] the

required factors of supportability or consistency" (id. at 13-14 (citing Tr. 26)), and "overlook[ed] significant portions of the record which substantiate[d] the postural and environmental limitations opined" (id. at 14; see also id. at 14-15 (summarizing record evidence Plaintiff feels substantiates the consultants' postural and environmental limitations (citing Tr. 507, 509, 518-19, 535, 540, 857, 922, 1329-30))). For the reasons that follow, those contentions fall short.

For benefits applications filed on or after March 27, 2017 (such as Plaintiff's (see Tr. 169-75)), the SSA has enacted substantial revisions to the regulations governing the evaluation of opinion evidence, see Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017). Under the new regulations, ALJs need not assign an evidentiary weight to medical opinions or accord special deference to treating source opinions. See 20 C.F.R. § 404.1520c(a) (providing that ALJs "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . ., including those from [a claimant's] medical sources"). Instead, an ALJ must determine and "articulate in [the] . . . decision how persuasive [he or she] find[s] all of the medical opinions . . . in [a claimant's] case record." 20 C.F.R. § 404.1520c(b) (emphasis added). Moreover, when a medical source provides more than one opinion, the ALJ can evaluate the

persuasiveness of such opinions "together in a single analysis," and need not articulate how he or she considered those opinions "individually." 20 C.F.R. § 404.1520c(b)(1).

In evaluating the persuasiveness of an opinion, the SSA deems supportability and consistency "the most important factors," and, thus, the ALJ must address those two factors in evaluating the persuasiveness of an opinion. 20 C.F.R. § 404.1520c(b)(2).[6] The ALJ must discuss the three other persuasiveness factors — the nature and extent of the medical source's relationship with the claimant and area of specialization, as well as the catch-all "other factors that tend to support or contradict" the opinion, 20 C.F.R. § 404.1520c(c)(3)-(5) — only when the ALJ finds two or more opinions about the same issue "[e]qually persuasive" in terms of supportability and consistency, 20 C.F.R. § 404.1520c(b)(3).

**1. Dr. Molina's Opinions**

On May 15, 2024, Dr. Molina completed a pre-printed form entitled "Behavioral Health Supplemental Functional Assessment Form" (Tr. 1235 (all-caps and bold font omitted)) in connection with Plaintiff's long-term disability claim. (See Tr. 1235-37.) On the portion of that form requesting "a prognosis/estimated date

[6] "Supportability" means "[t]he extent to which a medical source's opinion is supported by relevant objective medical evidence and the source's supporting explanation." Revisions to Rules, 82 Fed. Reg. at 5853; see also 20 C.F.R. § 404.1520c(c)(1). "Consistency" denotes "the extent to which the opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim." Revisions to Rules, 82 Fed. Reg. at 5853; see also 20 C.F.R. § 404.1520c(c)(2).

for return to work[,]" Dr. Molina stated that "chronic anxiety conditions are subjected to exacerbation of symptoms and flair [sic] ups of anxiety[,]" and, in response to a request to "specify types of reasonable accommodations . . . that would facilitate a re-entry into the work place[,]" Dr. Molina wrote: "[Plaintiff] suffers from a chronic anxiety conditions [sic] and depression, symptoms fluctuates [sic] due to perceive [sic] stress levels." (Tr. 1235.) In Dr. Molina's opinion, Plaintiff could not return to his previous job because "chronic anxiety disorder prevents job performance." (Id.) Dr. Molina further opined that Plaintiff's impairments caused "[e]xtreme inability" to "maintain appropriate control of emotions" and "significant[]" impairment of his "[a]bility to maintain focus/attend/concentrate throughout a normal work day." (Id.) In Dr. Molina's estimation, Plaintiff's mental conditions did not affect his abilities to drive, "[m]ak[e] decisions regarding finances or legal matters[,]" "[c]omplet[]e household chores/tasks" such as "cut[ting the] grass[,]" and "[c]ar[e] for others" (id. at 1235-36), but did limit his abilities to "[s]ocializ[e,]" "[s]hop[ ,]" "[a]ttend[] school[,]" and "[t]ravel out of state" on "airplanes or trains" (id. at 1236).

On October 7, 2024, Dr. Molina completed another pre-printed form (see Tr. 1305-09) bearing the title "Medical Source Statement (Psychiatric/Cognitive)" (Tr. 1305 (all-caps and bold font omitted)), on which he noted that he had treated Plaintiff for 14

months at an interval of every two to three months (see id.). Dr. Molina listed (A) Plaintiff's diagnoses as "chronic post-traumatic stress disorder [('PTSD'),] major depressive disorder, recurrent, moderate[,] moderate alcohol dependency in remission[, and] adjustment disorder, mixed emotions[,]" and (B) his medications as aripiprazole, naltrexone, trazodone, buspirone, sertraline, and hydroxyzine, which caused "sedation[ and] upset stomach." (Id. (standard capitalization applied).) Additionally, Dr. Molina identified Plaintiff's symptoms as "[a]nhedonia," "[d]ecreased energy," "guilt or worthlessness," "[m]ood disturbance," "[p]sychomotor agitation or retardation," [s]ubstance dependence," "[e]motional withdrawal or isolation," "[m]otor tension," "[e]motional lability," and "[s]leep disturbance." (Tr. 1306.)

According to Dr. Molina, Plaintiff would have "[s]erious[] limit[ations]" in multiple work-related abilities, including his abilities to "[m]aintain attention for two-hour segments," "[w]ork in coordination with or in proximity to others without being unduly distracted," "[c]omplete a normal workday or workweek without interruptions from psychologically based symptoms," "[p]erform at a consistent pace without an unreasonable number and length of rest periods," "[g]et along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes," "[r]espond appropriately to changes in a routine work setting," "[u]nderstand and remember detailed instructions," "[c]arry out detailed

instructions," "[s]et realistic goals or make plans independently of others," "[i]nteract appropriately with the general public," "[m]aintain socially appropriate behavior," and "[u]se public transportation." (Tr. 1307-08.) Dr. Molina further opined that Plaintiff's mental impairments and treatment would cause him to miss work "[a]bout four days per month." (Tr. 1308.)

On November 4, 2024, Plaintiff's wife sent the following email to Dr. Molina and a nurse assisting Dr. Molina:

> Urgent - Melissa [A. Richardson, BSN, RN MH&BS] and Dr. Molina, although [Plaintiff] and I met with Dr[.] Molina last week, after I looked at pages 2-4 of The Medical Source Statement more carefully and Dr[.] Molina's assessments, <u>it would appear [Plaintiff] would be more likely "Unable to meet competitive standards" and "no useful ability to function" in some areas</u>. Initially I thought reemphasizing the question around 12 months would suffice, but his treatment plan and <u>the explanations given by Dr[.] Molina better align with "unable to meet competitive standards" and "no useful ability to function"</u>. Can the form be completed and updated or do we need to meet with Dr[.] Molina to discuss. [Plaintiff]'s [DIB] hearing is Thursday and <u>the form would need to be updated and accurate prior to 11.7.24</u>. Thank you. Tammy Bryant (on behalf of [Plaintiff])

(Tr. 505 (emphasis added).)

In accordance with the request of Plaintiff and his wife, on November 18, 2024 (i.e., 11 days after Plaintiff's hearing before the ALJ), Dr. Molina re-completed the "Medical Source Statement (Psychiatric/Cognitive)" form (Tr. 1452-56), which contained similar diagnoses and medications (<u>compare</u> Tr. 1305, <u>with</u> Tr. 1452), but added additional symptoms (<u>compare</u> Tr. 1306, <u>with</u>, Tr.

1453), and changed all of the ratings for Plaintiff's abilities to either "[u]nable to meet competitive standards" or "[n]o useful ability to function" (compare Tr. 1307-08, with Tr. 1454-55).

The ALJ summarized Dr. Molina's above-quoted opinions (see Tr. 26), and then assessed them as follows:

> The [ALJ] finds the opinions of Dr. Molina are not persuasive. . . . These opinions are not supported by treatment records that document appropriate grooming, normal orientation, good eye contact, cooperative attitude, normal speech, logical thought process, intact insight, intact judgment, intact memory, and adequate concentration ([Tr. 571]). These opinions are not consistent with the opinions of the [s]tate agency physicians.

(Id. (emphasis added).) Plaintiff challenges both the ALJ's supportability and consistency findings but, for the reasons that follow, neither challenge carries the day.

First, Plaintiff disputes the ALJ's finding that "'treatment records that document appropriate grooming, normal orientation, good eye contact, cooperative attitude, normal speech, logical thought process, intact insight, intact judgment, intact memory, and adequate concentration'" did not support Dr. Molina's opinions (Docket Entry 7 at 10 (quoting Tr. 26 (in turn citing Tr. 571))), because, in Plaintiff's view, "[e]ach of Dr. Molina's assessments contains support for the included limitations" (id.). In that regard, Plaintiff notes that, "[i]n the May assessment, Dr. Molina cited [Plaintiff]'s chronic anxiety and the presence of outside stressors that would exacerbate his symptoms, such as legal issues

and social situations" (id. (citing Tr. 1235-36)) and, in the October and November assessments, Dr. Molina cited [Plaintiff]'s symptoms which supported the opined limitations" (id. (citing Tr. 1306, 1453)), as well as "[Plaintiff]'s prescriptions and course of treatment" (id. at 11 (citing Tr. 1305, 1452)).

Plaintiff's argument fails because he does not explain how the above-listed information supports Dr. Molina's extreme limitations. (See id. at 10-11.) Dr. Molina's mere listing of Plaintiff's diagnoses and treatments did not elucidate how those diagnoses and treatments rendered Plaintiff unable to perform even simple, unskilled work with significantly reduced interaction requirements, as reflected in the RFC (see Tr. 22). See Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) ("[A] psychological disorder is not necessarily disabling. There must be a showing of related functional loss."). Moreover, Dr. Molina's check-boxed list of symptoms does not suffice to support his opinions, because the regulations define "[s]ymptoms" as "[a claimant's] own description of [his or her] physical or mental impairment," 20 C.F.R. § 404.1502(i) (emphasis added), rather than a medical provider's objective observation of those impairments. Consistent with that regulatory definition, Dr. Molina's list of symptoms, including "[a]nhedonia," "[i]mpairment in impulse control," "[p]overty of content of speech," "[d]ifficulty thinking or concentrating," "[p]sychomotor agitation or retardation," and "[s]leep disturbance"

(Tr. 1453), appears to reflect Plaintiff's subjective reports to Dr. Molina, because Dr. Molina's mental status examinations consistently recorded normal insight and judgment, speech, thought processes and content, memory, attention, and concentration (see, e.g., Tr. 571 (describing Plaintiff as "conversant, calmed, in good spirits, . . . [with] good eye contact, pleasant, . . . friendly, [and] cooperative" with "full range" affect, "normal speech pattern," "focused, logical and goal directed" thoughts, and "intact" insight, judgment, and memory), 659, 1010, 1063, 1170, 1381-82, & 1439-40 (reflecting similar findings on mental status examination). See Vidro-Ojeda v. Kijakazi, No. 1:20CV238, 2021 WL 4034231, at *11 (M.D.N.C. Sept. 3, 2021) (unpublished) ("Although both [medical opinion sources] listed various symptoms . . . as the basis for the their opinions, the record supports the view that they included those symptoms based on [the p]laintiff's subjective reports, as their records did not document any of those findings objectively on examination[.]" (internal parenthetical citation omitted)), recommendation adopted, 2021 WL 5999559 (M.D.N.C. Dec. 20, 2021) (unpublished) (Tilley, S.J.).

Plaintiff additionally faults the ALJ for "determin[ing that Dr. Molina's] opinions were not supported by treatment records from December 2023" (Docket Entry 7 at 11 (referencing Tr. 26 (in turn citing Tr. 571))), because "th[at] is an evaluation of the *consistency* of [Dr. Molina's] opinions, which examines the extent

to which they are consistent 'with the evidence from other medical sources and nonmedical sources in the claim'" (id. (emphasis in original) (quoting 20 C.F.R. § 404.1520c(c)(2))). That argument glosses over the fact that, in finding Dr. Molina's opinions not supported, the ALJ cited to Dr. Molina's own treatment record for Plaintiff dated December 18, 2023 (see Tr. 26 (citing Tr. 571)), and, thus, appropriately evaluated the extent to which Dr. Molina's "objective medical evidence and supporting explanations . . . support[ed] his . . . medical opinions," 20 C.F.R. § 404.1520c(c)(1) (parentheses omitted).

Second, Plaintiff argues that "[t]he ALJ's consistency analysis of Dr. Molina's opinions is also flawed[,]" because "the ALJ effectively rejected Dr. Molina's more restrictive limitations because they were inconsistent with [the state agency psychological consultants'] limitations[,] which the ALJ determined were not restrictive enough." (Docket Entry 7 at 11-12 (citing Tr. 26).) In plaintiff's view, "[w]ithout further explanation, a reviewing Court is unable to determine whether this decision is supported by substantial evidence." (Id. at 12 (citing John S. v. O'Malley, No. 1:23CV216, 2024 WL 43348972, at *5 (M.D.N.C. Sept. 30, 2024) (unpublished) (Peake, M.J.)).)

The ALJ indeed found Dr. Molina's "opinions not consistent with the opinions of the [s]tate agency [psychological consultants]" (Tr. 26), but did not err in relying on that evidence

as inconsistent with Dr. Molina's opinions, because the ALJ did not entirely reject the consultants' opinions (see id.). The ALJ found the consultants' opinions "partially persuasive," noting that the consultants opined that "[Plaintiff] is able to sustain attention and concentration for simple, routine, and repetitive tasks [('SRRTs')]; able to interact as necessary; and adapt as necessary" (id. (citing Tr. 72-73, 82)), and agreed with the consultants' limitation to SRRTs "due to [Plaintiff]'s allegations of memory loss and difficulty focusing" (id. (citing, inter alia, Tr. 1284)). However, the ALJ explained that the record supported "greater limitations of simple workplace changes and occasional social interaction due to [Plaintiff]'s subjective complaints of intrusive thoughts of past trauma, hypervigilance, social avoidance, irritability, and depressed mood." (Id. (citing Tr. 812).) Accordingly, the Court can "'trace the path' of the ALJ's reasoning," John S., 2024 WL 4348972, at *5 (quoting Boyd v. Kijakazi, No. 2:21CV29, 2022 WL 949904, at *2 (E.D. Va. Mar. 29, 2022) (unpublished)), in finding Dr. Molina's opinions inconsistent with the state agency psychological consultants' opinions.

Plaintiff additionally asserts that the ALJ "overlook[ed] portions of the record which Dr. Molina's opinions are consistent with" (Docket Entry 7 at 12), including the facts that (A) Plaintiff's "anxiety symptoms made him reliant on [his wife] to perform daily life activities" (id. (citing Tr. 799, 803, 825)),

(B) Plaintiff reported "anxiety with being around crowds" (id. (citing Tr. 780, 803)), as well as "daily anxiety, intrusive thoughts, hyper vigilance, and avoidance of social situations" (id. (citing Tr. 818)), and (C) "[h]e consistently presented dysphoric and anxious mood, and PHQ-9 and GAD-7 assessments consistently reflected moderately severe depression and severe anxiety" (id. (citing Tr. 772, 787, 800-01, 812, 818)). According to Plaintiff, "[t]he ALJ's failure to consider evidence that would substantiate Dr. Molina's opinions suggests selective review of the record, which is error." (Id. (citing Arakas v. Commissioner, Soc. Sec. Admin., 983 F.3d 83, 98 (4th Cir. 2020), and Lewis v. Berryhill, 858 F.3d 858, 869 (4th Cir. 2017)).)

In pointing to evidence Plaintiff believes supported Dr. Molina's mental limitations, Plaintiff misinterprets this Court's standard of review. The Court must determine whether substantial evidence, defined as "more than a mere scintilla of evidence but may be somewhat less than a preponderance," Mastro, 270 F.3d at 176 (brackets and internal quotation marks omitted), supported the ALJ's finding that Dr. Molina's opinions lacked consistency with the record evidence (see Tr. 26), and not whether other record evidence weighs against the ALJ's findings, see Lanier v. Colvin, No. CV414-004, 2015 WL 3622619, at *1 (S.D. Ga. June 9, 2015) (unpublished) ("The fact that [the p]laintiff disagrees with the ALJ's decision, or that there is other evidence in the record that

weighs against the ALJ's decision, does not mean that the decision is unsupported by substantial evidence.").

Here, in addition to noting that Dr. Molina's opinions lacked consistency with those of the state agency psychological consultants (see Tr. 26), earlier in the ALJ's decision, he discussed many aspects of the record evidence that did not harmonize with Dr. Molina's extreme opinions:

- "[a] neurologic examination on March 8, 2023, revealed . . . normal orientation, appropriate fund of knowledge, intact memory, [and] normal attention and concentration" (Tr. 23 (emphasis added) (citing Tr. 1285));

- "[a] mental status examination on June 15, 2023, revealed . . . normal orientation, intact memory, cooperative attitude, dysphoric mood, clear speech, relevant thought processes, intact perceptions, fair insight, and normal judgment" (Tr. 25 (emphasis added) (citing Tr. 769));

- "[i]n December 2023, [Plaintiff] stated he was doing a 'little bit better' with lower-level anxiety" (id. (emphasis added) (citing Tr. 570)), and "[a] mental status examination . . . showed appropriate grooming, normal orientation, good eye contact, cooperative attitude, normal speech, logical thought process, intact insight, intact judgment, intact memory, and adequate concentration" (id. (emphasis added) (citing Tr. 571));

- "[a] mental status examination on January 11, 2024, revealed appropriate eye contact, appropriate motor movement, clear speech, normal mood, congruent affect, logical thought process, and normal orientation" (id. (emphasis added) (citing Tr. 564));

- "[a] mental status examination on February 22, 2024, showed no gross abnormal movements,

appropriate grooming, normal orientation, good eye contact, appropriate behavior, cooperative attitude, normal speech, normal mood, logical thought process, intact judgment, intact insight, intact memory, and adequate attention span and concentration" (id. (emphasis added) (citing Tr. 1227));[7] and

- "[a] mental status examination on April 12, 2024, revealed neat appearance, cooperative attitude, normal speech, positive mood, logical thought process, good insight, good judgment, and normal orientation" (id. (emphasis added) (citing Tr. 1051)).

The ALJ's discussion of that evidence, in addition to his finding that Dr. Molina's opinions conflicted with those of the state agency psychological consultants (see Tr. 26), sufficiently explains his finding that record evidence lacked consistency with Dr. Molina's opinions (see id.).[8]

Plaintiff's assertion that the ALJ cherry-picked the evidence supporting his decision to discount Dr. Molina's opinions (see Docket Entry 7 at 12) fares no better. Notably, the ALJ did discuss Plaintiff's reports of "nervousness around crowds" (Tr. 23), and "intrusive thoughts of past trauma, hyper vigilance, social avoidance, irritability, and depressed mood" (Tr. 25), as well as a finding of "dysphoric mood" on mental status examination

[7] That mental status examination actually took place on April 2, 2024 (see Tr. 1223, 1228), and the date of "February 22, 2024" (Tr. 25) reflects the date a provider last recorded Plaintiff's vital signs (see Tr. 1227).

[8] The Court "must read the ALJ's decision as a whole," Keene v. Berryhill, 732 F. App'x 174, 177 (4th Cir. 2018), and, thus, can consider the ALJ's earlier discussion of the evidence.

(id.). Although the ALJ discussed neither Plaintiff's alleged reliance on his wife to perform daily activities, nor Plaintiff's PHQ-9 and GAD-7 assessments (see Tr. 22-26), "'there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision,'" Reid v. Commissioner of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014) (quoting Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005)). Moreover, Plaintiff has not explained how Plaintiff's subjective reports of reliance on his wife to complete daily activities and subjective ratings of depression and anxiety symptoms on self-administered assessments such as the PHQ-9 and GAD-7[9] should have compelled the ALJ to adopt

[9] "The Patient Health Questionnaire-9 [('PHQ-9')] is a self-administered scale that helps clinicians assess for depression. The nine items on the scale incorporate depression criteria from the [Diagnostic and Statistical Manual of Mental Disorders (Am. Psychiatric Ass'n 4th ed. 1994) ('DSM-IV')]." Xavier S. v. Saul, No. 1:19CV1195, 2020 WL 1015816, at *16 n.10 (E.D. Va. Mar. 2, 2020) (unpublished) (emphasis added) (internal citations omitted). The PHQ-9 "scores each of the nine DSM-IV criteria as '0' (not at all) to '3' (nearly every day). The total of the nine scores is used to rate the severity of depression. A total score of 0-4 is 'none,' 5-9 is 'mild,' 10-14 is 'moderate,' 15-19 is 'moderately severe,' and 20-27 is 'severe.'" Deboard v. Colvin, No. 3:16CV2661, 2017 WL 510743, at *3 (S.D.W. Va. Jan. 18, 2017) (unpublished), recommendation adopted sub nom. Deboard v. Berryhill, 2017 WL 510052 (S.D.W. Va. Feb. 7, 2017) (unpublished). "Like the PHQ-9, the Generalized Anxiety Disorder ('GAD')-7 is a self-administered diagnostic instrument to measure anxiety severity. A score of 0-4 represents a 'minimal' level of anxiety; 5-9, 'mild'; 10-14, 'moderate'; and 5-21, 'severe.'" Buechner v. Saul, No. 20CV379, 2021 WL 457610, at *2 n.3 (W.D. Wis. Feb. 9, 2021) (unpublished) (emphasis added) (internal citations omitted). Thus, Plaintiff's PHQ-9 and GAD-7 scores did not constitute "objective findings" substantiating Dr. Molina's opinions. See Facer v. Commissioner of Soc. Sec., No. CV 23-281, 2024 WL 5167714, at *1 n.1 (W.D. Pa. Dec. 19, 2024) (unpublished) ("[T]he ALJ's failure to discuss the PHQ-9 and GAD-7 scores in relation to their consistency with [a therapist]'s opinion is not reversible error as these scores are based on [the p]laintiff's subjective reports, not results on objective examination."); Nicole M. v. O'Malley, No. 7:22CV600, 2024 WL 1283343, at *5 n.3 (W.D. Va. Mar. 26, 2024) (unpublished) ("The PHQ-9 test appears to calculate a score based entirely on the subject's responses to certain questions. As one court put it, those test scores were 'based upon claimant's subjective reports, rather than [the provider's] objective assessments.'" (internal parenthetical citation omitted) (quoting Moffat v. Kijakazi, No.

Dr. Molina's extreme mental limitations (see Docket Entry 7 at 12), particularly given that, as discussed above, Dr. Molina consistently found appropriate behavior, good eye contact, normal speech, logical thoughts, and intact insight, judgment, memory, attention, and concentration when examining Plaintiff (see Tr. 571, 659, 1010, 1063, 1170, 1381-82, & 1439-40).

**2. Opinions of the State Agency Medical Consultants**

Plaintiff also attacks the ALJ's analysis of the persuasiveness of the state agency medical consultants' opinions, asserting that "[t]he ALJ found th[o]se opinions persuasive but rejected the postural and environmental limitations without . . . articulat[ing] the required factors of supportability or consistency" (Docket Entry 7 at 13-14 (citing Tr. 26)), and "overlook[ed] significant portions of the record which substantiate[d] the postural and environmental limitations opined" (id. at 14). In particular, Plaintiff notes that "[a] September 2023 MRI of the bilateral knees . . . revealed high grade cartilage defects" in both knees (id. (citing Tr. 540)), as well as that,

---

3:21CV129, 2022 WL 2196311, at *13 (N.D.W. Va. May 23, 2022) (unpublished), recommendation adopted, 2022 WL 2195764 (N.D.W. Va. June 17, 2022) (unpublished))); Amy R. v. Saul, No. 19CV1508, 2020 WL 3077502, at *1 (D. Minn. June 10, 2020) (unpublished) (rejecting the plaintiff's "argu[ment] that the ALJ erred when he failed to consider [the plaintiff's] PHQ-9 [and] GAD-7[ ] scores as objective evidence of severe depression and anxiety," because "the PHQ-9 and the GAD-7 are measurements that are derived solely from the patient's report of their own subjective experience" and, thus, "to rule that the tests are not subjective would unacceptably blur the line between subjective and objective tests").

"[o]n October 25, 2023, [Plaintiff] underwent a right knee chondroplasty" (id. (citing Tr. 507)) and "a left knee chondroplasty in October 2024" (id. at 15 (citing Tr. 509)). Plaintiff further points out that "[a]n August 2023 x-ray of the left foot revealed severe hallux valgus deformity" (id. (citing Tr. 857)), and "[a] follow up x-ray the following year revealed pronounced hallux valgus, pes planus, mild osteoarthritis, and calcaneal enthesophytes" (id. (citing Tr. 1330)). Plaintiff additionally emphasizes that "an October 2024 x-ray of the lumbar spine revealed mild sacroiliac degenerative [sic] with some slight scoliosis, minimal facet arthritis, and minimal degenerative change." (Id. (citing Tr. 1329).) In Plaintiff's view, "the ALJ again engaged in selective review of the record to form a basis for rejecting the postural and environmental limitations opined by the non-examining [s]tate [a]gency physical consultants, which is error." (Id. (citing Lewis, 858 F.3d at 869).)

The state agency medical consultants at the initial and reconsideration levels of review each opined that Plaintiff could lift/carry 50 pounds occasionally and 25 pounds frequently, sit, stand, and walk for up to six hours in an eight-hour workday, frequently climb ramps, stairs, ladders, ropes, and scaffolds, frequently kneel, crouch, and crawl, and should avoid concentrated exposure to hazards. (See Tr. 70-71, 79-80.) The ALJ found the consultants' opinions "persuasive except for the postural and

environmental limitations." (Tr. 26.) Although the ALJ found "[t]he record support[ed] medium exertion" (id.), he found that "[Plaintiff wa]s reasonably limited to never climb ladders, ropes or scaffolds; and never be exposed to hazards such as machinery and unprotected heights due to obesity, aortic valve regurgitation, diabetes, and hypertension." (Id. (emphasis added).)

As an initial matter, the ALJ clearly provided a consistency analysis of the consultants' opinions by pointing out that "the record support[ed] medium exertion" as opined by the consultants. (Tr. 26.) The ALJ explained further that, despite right knee arthroscopy in October 2023, "[b]y January 2024, [Plaintiff] was doing well with some stiffness in the hamstrings after driving and some knee swelling after exercising" and "was not taking medications for pain" and, "[b]y February 2024, [Plaintiff] had full range of motion, 5/5 strength, intact sensation, normal reflexes, and normal gait." (Id. (internal parenthetical citation omitted).)

Furthermore, to the extent the ALJ failed to evaluate the degree to which the consultants supported their opinions with explanations (see id.), Plaintiff has entirely failed to show how such an omission prejudiced him (see Docket Entry 7 at 14-15; see also Docket Entry 11 at 5-7). See generally Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) (observing that "[n]o principle of administrative law or common sense requires us to remand a case in

quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result"). With regard to exposure to hazards and climbing ladders, ropes, and scaffolds, the ALJ adopted more restrictive limitations than the state agency medical consultants' limitations (compare Tr. 22, with Tr. 70-71, 79-80), and, thus, remanding for the ALJ to (possibly) adopt the less restrictive limitations opined by those consultants would not lead to a favorable outcome in Plaintiff's case, see Fisher, 869 F.2d at 1057. Concerning the consultants' limitations to frequent climbing of ramps and stairs, kneeling, crouching, and crawling (see Tr. 71, 80), as the Commissioner argues (see Docket Entry 10 at 16-17), the jobs cited by the VE (see Tr. 61) and adopted by the ALJ at step five of the SEP (see Tr. 27) do not require more than frequent climbing, kneeling, crouching, or crawling, see Dictionary of Occupational Titles ("DOT"), No. 361.684-014 ("Laundry Worker I"), 1991 WL 672983 (G.P.O. 4th ed. rev. 1991) (reflecting "Not Present" for "Climbing," "Kneeling," "Crawling," and "Crouching"); DOT, No. 318.687-010 ("Kitchen Helper"), 1991 WL 672755 (indicating "Not Present" for "Climbing," "Kneeling," and "Crawling," and "Frequently" for "Crouching"). Thus, again, Plaintiff has not shown that remand for the ALJ to (potentially) adopt the consultants' restrictions with regard to climbing ramps/stairs, kneeling, crouching, and crawling would result in a more favorable outcome in Plaintiff's case, see Fisher, 869 F.2d at 1057.

Put simply, Plaintiff's first assignment of error misses the mark.

**2. Evaluation of Plaintiff's Subjective Symptom Reports**

Plaintiff's second and final issue on review contends that "[t]he ALJ failed to properly evaluate the subjective symptom testimony." (Docket Entry 7 at 15 (bold font and block formatting omitted); see also Docket Entry 11 at 7-9.) More specifically, Plaintiff alleges (A) that "the ALJ made a boilerplate finding that '[Plaintiff]'s medically determinable impairments could reasonably be expected to cause the alleged symptoms,'" but that "'[his] statements concerning the intensity, persistence and limiting effects of th[o]se symptoms [we]re not entirely consistent with the medical evidence and other evidence in the record'" (Docket Entry 7 at 16 (quoting Tr. 23)), as well as (B) that the ALJ "explained that [Plaintiff]'s subjective complaints [we]re inconsistent because 'the evidence generally d[id] not support [his] allegations of disability'" (id. (quoting Tr. 23)). In Plaintiff's view, "[t]he ALJ's subjective symptom analysis fails on two fronts[: 1)] the ALJ's exclusive consideration of the record evidence omits consideration of the additional relevant factors set forth in 20 C.F.R. § 404.1529(c)(3)" (id.), and 2) "the ALJ's rejection of [Plaintiff]'s subjective complaints on this limited basis is error[ under Arakas,]" which holds that "'the ALJ . . . may not disregard an individual's statements about the intensity, persistence, and

limiting effects of symptoms solely because the objective medical evidence does not substantiate them'" (id. at 16-17 (quoting Arakas, 983 F.3d at 95) (internal quotation marks omitted))). Those contentions fail to establish a basis for relief.

The Commissioner's regulations adopt a two-part test for evaluating a claimant's statements about symptoms. See 20 C.F.R. § 404.1529; see also Social Security Ruling 16-3p, Titles II & XVI: Evaluation of Symptoms in Disability Claims, 2017 WL 5180304, at *3 (Oct. 25, 2017) ("SSR 16-3p"). First, the ALJ must determine whether a claimant suffers from a "medically determinable impairment that could reasonably be expected to produce [the claimant]'s symptoms, such as pain." 20 C.F.R. § 404.1529(b); see also SSR 16-3p, 2017 WL 5180304, at *3. A claimant must provide "objective medical evidence from an acceptable medical source" to establish the existence of a medically determinable impairment "which could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. § 404.1529(a); see also SSR 16-3p, 2017 WL 5180304, at *3. Objective medical evidence consists of medical signs ("anatomical, physiological, or psychological abnormalities that can be observed, apart from [a claimant's] statements" and "must be shown by medically acceptable clinical diagnostic techniques," 20 C.F.R. § 404.1502(g)) and laboratory findings ("anatomical, physiological, or psychological phenomena that can be shown by the use of medically acceptable laboratory

diagnostic techniques," 20 C.F.R. § 404.15029(c). See 20 C.F.R. § 404.1502(f); see also SSR 16-3p, 2017 WL 5180304, at *3.

Upon satisfaction of part one by the claimant, the analysis proceeds to part two, which requires an assessment of "the intensity and persistence of [the claimant's] symptoms," as well as "the extent to which [those] symptoms limit [his or her] capacity for work." 20 C.F.R. § 404.1529(c); see also SSR 16-3p, 2017 WL 5180304, at *4. In making that determination, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." SSR 16-3p, 2017 WL 5180304, at *4. Where relevant, the ALJ will also consider the following factors in assessing the extent of the claimant's symptoms at part two:

> 1. [ D]aily activities;
>
> 2. The location, duration, frequency, and intensity of [] pain or other symptoms;
>
> 3. Precipitating and aggravating factors;
>
> 4. The type, dosage, effectiveness, and side effects of any medication [a claimant] take[s] or ha[s] taken to alleviate [] pain or other symptoms;
>
> 5. Treatment, other than medication, [a claimant] receive[s] or ha[s] received for relief of [] pain or other symptoms;

> 6. Any measures [a claimant] use[s] or ha[s] used to relieve [] pain or other symptoms (e.g., lying flat on [his or her] back, standing for 15 to 20 minutes every hour, or sleeping on a board, etc.); and
>
> 7. Any other factors concerning [a claimant's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3); see also SSR 16-3p, 2017 WL 5180304, at *7-8. The ALJ cannot "reject [a claimant's] statements about the intensity and persistence of pain or other symptoms or about the effect [those] symptoms have on [the claimant's] ability to work solely because the available objective medical evidence does not substantiate [the claimant's] statements." 20 C.F.R. § 404.1529(c)(2) (emphasis added); see also SSR 16-3p, 2017 WL 5180304, at *5.

In this case, the ALJ found, at part one of the subjective symptom analysis, that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but then determined, at part two, that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms [we]re not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in th[e ALJ's] decision." (Tr. 23; see also id. ("As for [Plaintiff]'s statements about the intensity, persistence, and limiting effects of his symptoms, they are inconsistent because the

evidence generally does not support [his] allegations of disability.”).)

The ALJ thereafter discussed the record evidence, making the following, pertinent observations:

- “[i]n September 2023, [at ] a new patient evaluation for aortic regurgitation[,] . . . [Plaintiff] was doing well despite elevated blood pressure, heart murmur, and night sweats[,] . . . he denied palpitations, chest pain, shortness of breath, edema, lightheadedness, headaches, and syncope[,] . . . [he] was physically active and exercised three to five days per week doing pull-ups, squats, bench presses, elliptical machine, and boxing[,] . . . [and Plaintiff’s cardiologist] described [Plaintiff]’s aortic regurgitation as asymptomatic and prescribed [a]torvastatin for hypercholesterolemia and [a]mlodipine for hypertension” (Tr. 24 (emphasis added));

- “[i]n November 2023, [Plaintiff] was instructed to increase activities as tolerated” and, “[b]y January 2024, [he] was doing well with some stiffness in the hamstrings after driving and some knee swelling after exercising[,]” “was not taking medications for pain management, and . . . did not need a refill[,]” and [Plaintiff’s knee surgeon] referred [Plaintiff] to physical therapy” (id. (emphasis added));

- “[i]n August 2024, [Plaintiff] is doing well and remains physically active by weight training and walking several miles at a time” (id. (emphasis added)); and

- “[i]n April 2023, [Plaintiff] stated his pain has aggravated his mental health symptoms” but, by “December 2023, [Plaintiff] stated he was doing a ‘little bit better’ with lower-level anxiety[,]” and “Dr. Molina prescribed [s]ertraline” (Tr. 25 (emphasis added)).

The ALJ's above-emphasized observations make clear that, contrary to Plaintiff's assertions, the ALJ did consider the factors required by Section 404.1529(c)(3) and SSR 16-3p, such as Plaintiff's extensive exercise activities, his reports to medical providers regarding improvement in his symptoms, reported aggravating factors, and medications and other treatment Plaintiff used to relieve his symptoms. (See Tr. 23-25.) Moreover, those observations also make clear that the ALJ did not solely rely on objective medical evidence to discount Plaintiff's subjective symptom reports in contravention of Arakas.

Lastly, even assuming, arguendo, that the ALJ did not sufficiently consider the factors under Section 404.1529(c)(3) in assessing Plaintiff's subjective symptom reports, the Court should still not order remand. As the Commissioner notes (see Docket Entry 10 at 17-19), Plaintiff has neither identified any evidence the ALJ failed to consider, nor argued how a more thorough analysis of Plaintiff's subjective symptom reports by the ALJ would have led to a different result in Plaintiff's case (see Docket Entry 7 at 15-17; see also Docket Entry 11 at 7-9). That failure precludes relief. See Belk, Inc. v. Meyer Corp., U.S., 679 F.3d 146, 152 n.4 (4th Cir. 2012) (deeming issue "waived because [the plaintiff] fail[ed] to develop [an] argument to any extent in its brief"); United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[A] litigant has an obligation to spell out its arguments squarely and

distinctly, or else forever hold its peace." (internal quotation marks omitted)); see also Fisher, 869 F.2d at 1057 (observing that "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result").

In light of the foregoing analysis, Plaintiff's second assignment of error falls short.

## III. CONCLUSION

Plaintiff has not established an error warranting remand.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, and that this action be dismissed with prejudice.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

August 11, 2026